# United States District Court
## for the
## Western District of New York

| | |
|---|---|
| United States of America | |
| v. | Case No. 20-M-178 |
| TIANA MINTER | |
| *Defendant* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of November 25, 2020, in the County of Erie, in the Western District of New York, the defendant, TIANA MINTER, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by lying to Special Agents from the Federal Bureau of Investigation about the whereabouts of a federal fugitive, Denzel Robinson a/k/a "SPARKS", at 17 Manhattan Avenue, Buffalo, NY, 14215. The statement and representation were false because, as TIANA MINTER then and there knew, Denzel Robinson a/k/a "SPARKS" was hiding in the attic of 17 Manhattan Avenue at the time she stated to agents she was unaware of his whereabouts.

In violation of Title 18, United States Code, Section 1001(a)(2).

This Criminal Complaint is based on these facts:

☒   Continued on the attached sheet.

*Complainant's signature*

THOMAS WEIS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before and signed telephonically.

Date: December 3, 2020

*Judge's signature*

City and State: Buffalo, New York

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF ERIE         ) ss:
CITY OF BUFFALO       )

### I.   INTRODUCTION

I, **Thomas V. Weis**, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, having been duly sworn, states as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) of the United States Department of Justice. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have served as an FBI Special Agent since March of 2017.[1] During that time, I have participated in investigations involving drug trafficking and organized crime matters. In addition, I have had the opportunity to work with several other FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated drug trafficking networks, with regard to the manner in which controlled substances are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York. As a result of my experience, I am familiar with how

---

[1] I was also previously employed from 2007 to 2014 as a United States Army Infantry Officer, and from 2014 to 2015 as a United States Secret Service Uniformed Officer with the Department of Homeland Security.

1

controlled substances are obtained, diluted, packaged, distributed, sold, and used in the framework of drug trafficking in the Western District of New York and how drug traffickers utilize wire communications to facilitate their illegal activities. My investigative experience detailed herein, and the experiences of other law enforcement agents, who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.

3. Your Affiant states that this investigation was conducted by Special Agents of the FBI and other law enforcement personnel assigned to the FBI Buffalo Division - Safe Streets Task Force (FBI-SSTF).[2] Your Affiant is fully familiar with the facts and circumstances of this investigation, such familiarity having been gained through: your Affiant's personal knowledge based upon your Affiant's participation in this investigation; statements by and/or reports provided to your Affiant by law enforcement personnel of the FBI-SSTF, physical surveillances, records checks of various public and law enforcement data bases, and other investigative techniques.

4. I make this affidavit in support a criminal complaint charging **TIANA MINTER** with knowingly and willfully make a materially false, fictitious, or fraudulent statement or representation to Special Agents of the Federal Bureau of Investigation in violation of Title 18, United States Code, 1001(a)(2), and did harbor and conceal federal fugitive DENZEL ROBINSON a/k/a "SPARKS", so as to prevent his discovery and arrest

---

[2] The SSTF is comprised of Agents and Investigators from the Immigration and Customs Enforcement, Erie County Sheriff's Office, New York State Police, Lackawanna Police Department, Niagara Frontier Transportation Authority Police Department, U.S. Border Patrol, and the Buffalo Police Department.

after notice or knowledge of the fact that a warrant had been issued for ROBINSON in violation of bail.

## II. DETAILS OF THE INVESTIGATION

5.  Members of the FBI Streets Task Force (SSTF) have been targeting members and associates of the G-Shine set, Bloods gang. G-Shine is a gang which primarily controls territory on 19th Street between Massachusetts Avenue and Hampshire Street, and along Grant Street between West Ferry Street and Garner Avenue within the west-side of Buffalo, New York. Many members of G-Shine set live within and near this gang-controlled territory. Additionally, many houses in this area are used for the storage of firearms and narcotics. Several members of G-Shine set have been arrested within the Buffalo area, in possession of narcotics as well as firearms. Numerous shootings have occurred in and around the west-side of Buffalo, where members of G-Shine set were the perpetrators or targets of these violent acts. Members of the gang are responsible for the distribution of powder cocaine, crack cocaine, and heroin in and around the west-side of Buffalo, NY. Members and/or associates of this gang have been known to commit violent acts in furtherance of their illegal activities, including, but not limited to, homicide.

6.  On April 30, 2020, the Honorable Michael J. Roemer, U.S. Magistrate Judge in the Western District of New York signed an arrest warrant charging ROBINSON with violating Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm and ammunition). ROBINSON was subsequently released on Pretrial supervision with conditions of his release.

3

7. Pretrial services then determined that ROBINSON had violated the conditions set forth by the court. On Tuesday, October 13, 2020, the Honorable Michael J. Roemer, U.S. Magistrate Judge in the Western District of New York signed an arrest warrant charging ROBINSON with violating Pretrial Supervision conditions from a previous federal arrest.

8. To note, members of the FBI-SSTF and the Buffalo Police Department Homicide have determined that ROBINSON is a person of interest for a shooting that occurred on October 21, 2020, the eastside of Buffalo, New York.

9. On October 16, 2020, the Honorable Michael J. Roemer, U.S. Magistrate Judge in the Western District of New York signed a Pen register and Trap and Trace Device warrant for Facebook user identification number 100007537423341. This Facebook account is known to law enforcement as being utilized by ROBINSON.

10. On October 21, 2020, officers of the Buffalo Police Department (BPD) conducted a traffic stop of a suspicious silver GMC Acadia with incorrect registration. ROBINSON was identified by BPD officers for driving without a license and issued a misdemeanor appearance ticket.

11. On October 26, 2020, the Honorable Michael J. Roemer, U.S. Magistrate Judge in the Western District of New York signed a warrant, authorizing the capture of precision data location of cellular telephone number 716-400-5036, a device known to law enforcement as being utilized by ROBINSON.

12. Your affiant began receiving precision data location of cellular telephone number 716-400-5036 from T-Mobile on October 29, 2020. Receipt of the location data prompted law enforcement to conduct physical surveillance to locate ROBINSON.

13. On November 18, 2020, after reviewing Internet Protocol (IP) address information provided from Facebook for user account 100007537423341, it was determined by your affiant that ROBINSON was logging on to a Spectrum Charter Communications Wi-Fi network. Subsequently, a subpoena was generated and sent to Charter Communications in order to identify the subscriber and address information. Charter Communications revealed that the IP address returned to Bryan Rogers at 17 Manhattan Avenue (Lower), Buffalo, NY 14215.

14. Law enforcement began conducting surveillance of 17 Manhattan Avenue, Buffalo, NY 14215 on November 20, 2020. Surveillance units observed a silver GMC Acadia with temporary New Jersey registration H683169, matching the make and model of the vehicle that BPD stopped on October 21, 2020, parked in the driveway of the target residence.

15. On November 22, 2020, your affiant conducted physical surveillance of 17 Manhattan Avenue, Buffalo, NY 14215. The silver GMC Acadia, temporary New Jersey registration H683169 was again parked in the driveway of the target residence. Your affiant began to review Facebook pen register information and determined that user account 100007537423341 was logged on to the Wi-Fi network at the target residence. In addition, your affiant reviewed precision data location of cellular telephone number 716-400-5036 and

determined that the telephone was located in vicinity of the target residence. Your affiant observed ROBINSON exit 17 Manhattan Avenue, Buffalo, NY 14215 and enter the silver GMC Acadia.

16. On November 23, 2020, the Honorable Jerimiah J. McCarthy, U.S. Magistrate Judge in the Western District of New York signed a search warrant for 17 Manhattan Avenue (Lower), Buffalo NY 14215, for the purposes of arresting ROBINSON.

17. On November 25, 2020, members of the FBI Special Weapons and Tactics (SWAT) team conducted a knock and announce of their presence of 17 Manhattan Avenue, Buffalo, NY 14215, in order to effect the federal arrest of ROBINSON. During the operation, **MINTER** as well as the other residents of 17 Manhattan Avenue exited the residence and were immediately questioned about the whereabouts of ROBINSON's location. **MINTER** informed law enforcement that **MINTER** was unaware of ROBINSON's whereabouts, and further stated that **MINTER** did not know who ROBINSON was.

18. To note, your affiant conducted physical surveillance of 17 Manhattan Avenue prior to the arrest operation. The silver GMC Acadia was observed in the driveway of the Target Residence both prior to and during the arrest operation. Further, your affiant reviewed Facebook pen register information and determined that user account 100007537423341 was logged on to the Wi-Fi network at the residence. A review of the precision data location indicated that cellular telephone number 716-400-5036 was located in vicinity of the target residence in the early morning of November 25, 2020.

19. **MINTER** stated that the silver GMC Acadia parked in the driveway of the residence was given to **MINTER** by ROBINSON's father. FBI-SWAT members informed **MINTER** that making materially false statements to a federal agent is a violation of USC Title 18, §1001, punishable by a fine and over a year in jail. **MINTER** acknowledged that she understood. FBI members again asked if **MINTER** had any knowledge as to the location of ROBINSON and **MINTER** replied "No". **MINTER** voluntarily provided verbal consent for the FBI to search the residence located at 17 Manhattan Ave (Upper), Buffalo, NY 14215.

20. FBI-SWAT cleared the lower and the upper apartment, and did not find ROBINSON located in either location. FBI-SWAT members did observe a pill bottle with the name "DENZEL ROBINSON" written on the label of the container, found in a bedroom of the upper apartment of 17 Manhattan Avenue. Your affiant told **MINTER** that a pill bottle with ROBINSON's name on it was discovered in bedroom of her apartment. **MINTER** stated that she knew ROBINSON and he was last at the 17 Manhattan Ave (Upper) approximately a month prior, when they had sexual intercourse. **MINTER** claimed she had not seen ROBINSON since.

21. **MINTER** told FBI-SSTF members that ROBINSON utilizes cellular telephone number 716-400-5036. FBI-SSTF members proceeded to call the target cellular telephone in an attempt to contact ROBINSON. As this was taking place, FBI-SWAT members who were in the upper apartment of the target residence, heard and observed a cellular telephone on a bed in the bedroom. This cellular telephone was identified as ROBINSON's target cellular device. Your affiant questioned **MINTER** about ROBINSON's cellular telephone. **MINTER**

7

was asked who the phone belonged to, she claimed that it was hers, but **MINTER** was unable to unlock it, because ROBINSON maintained the device password. **MINTER** stated to your affiant that ROBINSON left the cellular phone in the silver GMC Acadia approximately three days prior. **MINTER** claimed that she brought the phone inside the apartment to hold on to it for ROBINSON. **MINTER** reiterated that ROBINSON was not currently at the 17 Manhattan Avenue residence.

22. FBI-SWAT members located a locked door on the second story landing, which lead to the attic of the residence. This locked door was observed to have two metal oven racks leaning up against the door. Your Affiant asked **MINTER** if she had access to the locked attic of 17 Manhattan Avenue. **MINTER** told your Affiant that she did not have a key to the door, and that the landlord of the residence locked this attic door prior to November 25, 2020.

23. To note, FBI-SWAT members observed **MINTER** prior to her leaving the upper apartment of 17 Manhattan Avenue. **MINTER** was seen moving on and off on the second floor landing of the side stairs, several times. It was later discovered that this second floor landing lead directly to the attic of the residence.

24. FBI-SWAT and FBI-SSTF members located the landlord of the target residence who voluntarily provided a key and verbal consent for the FBI to search the attic of 17 Manhattan Avenue, Buffalo, NY 14215. FBI-SWAT members located ROBINSON hiding in the attic of the target residence.

25. **MINTER** made numerous materially false statements to FBI Agents as detailed above. **MINTER** also attempted to harbor and conceal the hiding area of **ROBINSON** while knowing that FBI-SSTF members were attempting to locate **ROBINSON** and serve a valid Federal warrant, which is a matter within their jurisdiction. **MINTER** made materially false statements to FBI Agents in order to prevent law enforcement from locating **ROBINSON** and arresting him.

**WHEREFORE**, based upon the foregoing, I respectfully submit that there is probable cause to believe that **TIANA MINTER** did knowingly, willfully and unlawfully violate Title 18, United States Code, 1001(a)(2).

THOMAS V. WEIS
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed telephonically this ___3rd___ day of December, 2020.

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

9